TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00134-CR






Lee Vaughn Davis, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 63571, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Lee Vaughn Davis of the offense of aggravated assault
with a deadly weapon. See Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2009). Davis pleaded
true to enhancement paragraphs alleging three prior felony convictions, and punishment was assessed
at 99 years' imprisonment.

 The jury heard evidence that, on June 9, 2008, Davis attacked his girlfriend,
Samantha Montgomery. Davis and Montgomery lived in an apartment complex in Harker Heights
with Montgomery's six-year-old daughter, A.M., and five-year-old son, I.M. Montgomery testified
that, on the day of the alleged assault, she was planning to end her relationship with Davis. Fearing
how Davis might react to the break-up, Montgomery had sent A.M. to stay with Montgomery's
friend Turquis Miller in a neighboring apartment unit. At the time, I.M. was staying with his
grandmother.

 Montgomery testified that she called Davis and told him that she needed to speak
with him. When he arrived home, Montgomery recalled, she told Davis that she wanted to end their
relationship. According to Montgomery, Davis responded by putting his hand around her neck
and choking her. Montgomery explained that after Davis let go of her, she "tried to escape out the
door," but he grabbed her, pulled her back to him, and started slapping her. After that, Montgomery
testified, Davis pulled her into the kitchen, grabbed a steak knife, and held it up to her neck. 
Montgomery was "terrified" at this point and "had to talk nice to him just for him to remove it." 
Montgomery further testified that after Davis put the knife down on the kitchen table, he picked up
a frying pan and threatened to hit her with it. He then told her that if the police came, "he was going
to kill me and kill himself."

 Later, Montgomery continued, A.M. returned home and knocked on the door. Davis
began yelling at A.M., and Montgomery told her to return to Miller's apartment. According to
Montgomery, after A.M. left, Davis resumed choking and hitting her.

 Miller testified that A.M. returned to her apartment crying hysterically. After
speaking with A.M. about why she was upset, and learning from a neighbor that he had heard noises 
coming from Montgomery's apartment, Miller became concerned and immediately called 911. The
police arrived shortly thereafter.

 Officer Tammy Pearson of the Harker Heights Police Department testified that when
she and another officer arrived at Montgomery's apartment and announced their presence, "the door
flew open" and Montgomery ran past the officers and down the stairs. Pearson then saw Davis
in the apartment and attempted to find out from him what had happened. However, according to
Pearson, Davis was very angry and agitated and the officers had difficulty eliciting information from
him. Pearson then left Davis with the other officer and went to find Montgomery. She found her
downstairs outside Miller's apartment and began asking her questions about the incident. During
their conversation, Davis "came walking very fast and in an aggressive manner over toward us and
he was demanding his keys from her." Fearing that Montgomery was in danger, Pearson placed
herself between them. Pearson testified that Davis then told her that "I would have to shoot him. 
He was going to make it a felony." Pearson thought this meant that Davis either had a weapon on
him or he was about to assault either her or Montgomery. Pearson then radioed for additional
backup and Davis walked away.

 When additional officers arrived, Davis was arrested. Pearson testified that Davis
resisted arrest and that there was a struggle between Davis and another officer, Brad Duffy, that
resulted in Davis being taken to the ground. Eventually, the officers were able to secure Davis in
the patrol car. Duffy testified that during the transport to the police department, Davis told the
officers, "You all f***ed up this time. . . . you're going to have to kill me before we get to the police
department." Duffy added that Davis made "several other threats" while he was in the patrol car and
remained "very irate and agitated."

 Davis's court-appointed attorney has filed a motion to withdraw supported by a
brief concluding that the appeal is frivolous and without merit. The brief meets the requirements of
Anders v. California, 386 U.S. 738 (1967), by presenting a professional evaluation of the record
demonstrating why there are no arguable grounds to be advanced. See also Penson v. Ohio, 488 U.S.
75 (1988); High v. State, 573 S.W.2d 807 (Tex. Crim. App. 1978); Currie v. State, 516 S.W.2d 684
(Tex. Crim. App. 1974); Jackson v. State, 485 S.W.2d 553 (Tex. Crim. App. 1972); Gainous
v. State, 436 S.W.2d 137 (Tex. Crim. App. 1969). Davis received a copy of counsel's brief and has
submitted a written response objecting to counsel's motion to withdraw and asserting reasons why
he does not believe the appeal is frivolous.

 We have reviewed the record, counsel's brief, and Davis's written response and
find no reversible error. See Garner v. State, No. PD-0904-07, 2009 Tex. Crim. App. LEXIS 1739,
at *8 (Tex. Crim. App. Dec. 9, 2009); Bledsoe v. State, 178 S.W.3d 824, 826-27 (Tex. Crim. App.
2005). We agree with counsel that the appeal is frivolous and without merit. Counsel's motion to
withdraw is granted.

 The judgment of conviction is affirmed.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: February 19, 2010

Do Not Publish